## Whitson v. American Bridge Company of New York.

(Decided May 12, 1914.)

### Appeal from Jefferson Circuit Court (Common Pleas, Second Division).

1. Master and Servant—Injury to Servant—Safe Place to Work—Carpenter—Evidence—Peremptory.—In an action by a carpenter for personal injuries occasioned by the alleged negligence of defendant in failing to remove the stump of a fence post from the ground where plaintiff was engaged in working for defendant in the construction of a bridge, evidence examined, and held, that the trial court properly instructed the jury to find for defendant.

2. Master and Servant—Carpenter—Scope of Employment.—A carpenter employed in the construction of a bridge, and engaged particularly in shaping railroad ties for use, when called upon to assist in carrying the ties from a pile to the skids where they are placed to be shaped, is, in the absence of evidence to the contrary, performing a service contemplated by the terms of his employment, and is therefore acting within the scope of his employment.

3. Master and Servant—Safe Place to Work—Duty of Master.— While the master is under the duty of using ordinary care to furnish his servants a reasonably safe place to work, and the servant does not assume the risk of dangers arising from the master's failure of duty in this respect unless he knows of the danger, or it is so obvious and patent as to charge a person of ordinary prudence with notice of it; yet the master is not an insurer of the safety of the servant, and is not required to take precautions against every possible accident, however improbable or unlikely its occurrence.

TAYLOR & McKEE, E. C. HUGHES, H. W. PHIPPS and CHAPEZE & CRAWFORD for appellant.

J. H. McCHORD and HUMPHREY, MIDDLETON & HUMPHREY for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

In this action for damages for personal injuries by plaintiff, William E. Whitson, against defendant, American Bridge Company of New York, the trial court, at the conclusion of plaintiff's evidence, directed a verdict in favor of defendant. Plaintiff appeals.

Plaintiff was injured under the following circumstances:

Defendant was engaged in constructing a railroad bridge across the Ohio River between Louisville, Kentucky, and New Albany, Indiana. Plaintiff was in defendant's employ as a carpenter, and had been so engaged for a month or more. On October 24, 1911, the day preceding the accident, he had assisted three other carpenters, Dempsey, Dugan and Underwood, in making skids on which the railroad ties were to be hewn and shaped for use. The next morning he was engaged for a while in adzing the ties upon the skids. About noon the foreman, Dempsey, directed plaintiff to assist him and the other two carpenters in carrying the ties from a pile in which they were placed to the skids, a distance of from 40 to 60 feet. Two of these ties were carried in safety. About six or eight feet from the nearest skid was the stump of a fence post, about six inches high. In carrying the third tie plaintiff and Dugan were holding the front end, while Dempsey and Underwood were in the rear. In some way Dempsey stumbled over the fence post, thus causing the tie to be thrown against plaintiff's side, and thereby inflicting the injuries of which he complains.

Plaintiff appears to concede that Dempsey, the foreman, while actually engaged in carrying the tie, was a fellow servant of plaintiff, and was not performing any act as vice-principal, for the negligent performance of which the master would be liable. He predicated his case on the failure of defendant to use ordinary care to provide him with a reasonably safe place to work. Some stress is put on the fact that plaintiff was called from his regular duties to perform other duties outside of the scope of his employment. The evidence, however, does not justify this conclusion. It shows that plaintiff, like the others, was a carpenter, and that all these carpenters were called upon to assist, and actually did assist, not only in making the skids, but in carrying the ties to the skids for the purpose of putting them in proper shape. So far as the record shows, the carrying of the ties to the skids was as much a part of the

duties of the plaintiff and of the other carpenters as the shaping of the ties after they were placed on the skids. In the absence of evidence to the contrary, it must be assumed that plaintiff, at the time of the accident, was performing a service contemplated by the terms of his employment, and was therefore acting within the scope of his employment. It is well settled, of course, that the master is under the duty of using ordinary care to furnish his servants a reasonably safe place to work, and that the servant does not assume the risk of dangers arising from the master's failure of duty in this respect unless he knows of the danger, or it is so obvious and patent as to charge a person of ordinary prudence with notice of it. Ashland, &c., v. Wallace's Adm'r., 19 Ky. L. R. 849, 101 Ky. 626; Ky. Freestone Co. v. McGee, 25 Ky. L. R. 2211. Following this rule, masters have been held liable for injuries to their servants resulting from failure to light their buildings properly. The Saratoga, 87 Fed. Rep. 349; H. C. Akeley Lumber Co. v. Rauen (C. C. A.) 58 Fed. Rep. 668; Sawyer v. Rumford Falls Paper Co., 90 Me. 354, 60 Am. St. R. 260; for negligence in leaving open and unprotected hatchways, trapdoors, etc.; Davies v. Oceanic Steamship Co., 89 Cal. 280; McDonnell v. I. C. R. R. Co., 105 Iowa, 459; and for a fail ure to keep in a safe condition floors, stairways, roofs, ceilings, and the walks or ways about the premises. Johnson v. Bellingham Bay Imp. Co., 13 Wash. 455; Ferris v. Hersheim, 51 La. Ann. 178; Engstron v. Ashland Iron, &c., Co., 87 Wis. 167; Siedentop v. Buse, 21 N. Y. App. Div., 592; U. S. Rolling Stock Co. v. Weir, 96 Ala. 396; Powers v. Standard Oil Co., 53 S. Car. 358. The master, however, is not an insurer of the safety of the servant. He is not required to take precautions against every possible accident, however improbable or unlikely its occurrence. He is only bound to use reasonable care in guarding against such accidents as may be anticipated by a person of ordinary prudence. Whether or not a place is reasonably safe varies with the character of the work and the circumstances of its performance. A hole or obstruction in the floor of a building might render it unsafe for an employe who had the right to use the floor and to assume that the master had made it reasonably safe, whereas the same hole or obstruction on the ground, where the light was abundant, might not render the premises unsafe for a carpenter whose work was necessarily of such a character as to

require him to take notice of those things which were right before his eyes. Thus it will not be contended that the master is under the primary duty to see that every space in the building is covered, or that every obstruction is removed from the pathway of a carpenter engaged in the construction. From the very nature of the work there will be openings through which he may fall, or obstructions with which he may come in contact. If the carpenter is at work on the ground he may come in contact with a tool-box or bench, a step, a fence, or a piece of timber. The master's duty to furnish the carpenter a reasonably safe place to work does not require him to cover up such openings or remove such obstructions, which are necessarily incident to the work, so that the carpenter cannot fail to see them except by his own neglect. So, too, where the carpenter is engaged in bridge construction, and is at work on the ground carrying and preparing timbers to be used in the bridge, there will necessarily be inequalities in the ground and obstructions in his way to which he cannot close his eyes. Here there was no obstruction in a beaten pathway along which the carpenters were required to go. They simply passed over the rough ground in carrying the tie from the pile to the skids. It would be carrying the safe place doctrine too far to say that under these circumstances the master was required to see that every slight depression in the earth was filled; that every tie or other piece of timber was moved out of the way; that every rock was removed or that every broken fence post was taken up. The obstruction not being concealed, and the work being performed in the broad daylight, the master has a right to assume that the servant will see, and the law imposes upon the servant the duty to see, such obstructions as are open and obvious to any person making use of his own eyes. Williams v. L. & N. R. R. Co., 111 Ky. 822, 64 S. W. 738; Bailey on Master and Servant, page 826; American Tobacco Co. v. Adams, 137 Ky. 414, 125 S. W. 1067; Harper v. I. C. R. R. Co., 115 S. W. 198; Lee v. C. & O. Ry. Co., 18 Ky. L. R. 829, 38 S. W. 509.

We therefore conclude that the trial court properly instructed the jury to find for the defendant

Judgment affirmed.