## Truesdell v. Chesapeake & Ohio Railway Company.

(Decided September 23, 1914.)

### Appeal from Lewis Circuit Court.

1. Master and Servant—Appliances—Master's Duty.—The master is only required to furnish implements or means for work which are reasonably safe for those exercising ordinary care for their own safety, and need not furnish the very best obtainable.

2. Master and Servant—Assumed Risk—Federal Employers' Liability Act.—The doctrine of assumed risk is abrogated by the Federal Employers' Liability Act only where the injury grows out of a violation of some Federal statute enacted for the safety of employes, and where plaintiff's claim does not grow out of such a violation the doctrine of assumed risk applies.

3. Master and Servant.—Injury to Employe—Assumed Risk—Peremptory.—Where plaintiff, a section laborer, was injured by the rebound of a rail which had been dropped by him and the other members of the crew, without negligence on their part, held that the danger of being struck by it was one of the risks ordinarily and usually incident to the employment, and one which plaintiff assumed, and that the trial court properly directed a verdict in favor of the defendant.

A. D. COLE for appellant.

WORTHINGTON, COCHRAN & BROWNING for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

In this action for damages by plaintiff, J. L. Truesdell, against defendant, Chesapeake & Ohio Railway Company, the trial court, at the conclusion of the evidence, directed a verdict in favor of the defendant. Plaintiff appeals.

Plaintiff was a section laborer, and had been so employed by the defendant for about two months prior to the accident, which occurred on November 20, 1911. On that day the section crew of which plaintiff was a member, and which consisted of a foreman and eight or nine laborers, was engaged in removing 60-pound and substituting 100-pound rails in defendant's switch track near the South Manchester depot in Lewis County. A few days before the accident the heavier rails had been deposited near the tracks. One of these rails was carried to the tracks and laid down. The second rail was then carried to the tracks. The foreman in charge of the work was present. When the crew reached the track some one of the crew gave the signal to throw the rail. When the rail was thrown it rebounded and struck and mashed plaintiff's toes. There was some evidence to the effect that the rail brace which was used for the purpose of keeping the 60-pound rail in position was not removed when the 60-pound rail was taken up, and that the heavier rail, when thrown, struck the rail brace, and this caused the rail to rebound.

In addition to the foregoing facts, there was evidence to the effect that the safer way to handle rails was by the use of rail tongs. It does not appear that such tongs were used during the time of plaintiff's.

employment. They had been used on that section, however, at one time for a short while. The usual and customary way of moving rails from one place to another was that adopted in handling the rail in question. The section crew would pick it up with their hands, carry it to the place where it was needed, and then, at the word of some member of the crew, drop it on the ground.

Defendant was engaged in interstate commerce, and plaintiff was at work preparing the tracks for use in interstate commerce.

The failure of the defendant to furnish tongs for handling the rails cannot, under the facts of this case, be regarded as negligence. The master is not bound to provide the very best implements or means which can be procured, or those which are absolutely the most convenient and safe. His duty is sufficiently discharged by providing implements or means which are reasonably safe for those exercising ordinary care for their own safety. New Galt House Co. v. Chapman, 124 Ky., 527, 99 S. W., 632; Flaig v. Andrews Steel Co., 141 Ky., 391, 132 S. W., 1015. While there was some evidence tending to show that the accident might have been prevented by the use of tongs, not only was there no evidence that the method employed was dangerous, but all the evidence showed that it was the usual and customary way of handling rails, and reasonably safe for those exercising ordinary care for their own safety. Nor can we say that the section foreman was negligent in not removing the rail brace before the rail was dropped. The brace referred to was a small iron plate fastened to the tie, and designed to fit against the rail and prevent it from slipping. The evidence does not show any necessity for removing it; on the contrary, the brace was permanent, and may have been intended for further use. Whether, therefore, the rail rebounded because it came in contact with the tie or the rail brace is immaterial. The result is the same in either case. Plaintiff knew of the presence of the ties, and also of the presence of the rail brace. Persons handling heavy objects like a railroad rail must necessarily take notice of the simple law of nature that the rail may slip or rebound or turn over when it comes in contact with the ground or ties or any other object upon which it is caused to fall. The doctrine of assumed risk has not

been entirely abrogated by the Employers' Liability Act. It is only where the injury grows out of a violation of some Federal statute enacted for the safety of employes that the doctrine of assumed risk no longer applies. C. & O. Ry. Co. v. DeAtley, 159 Ky., 687; Seaboard Airline Ry. Co. v. Horton, decided April 27, 1914, U. S. Adv. Ops. 1913, p. 635. As the plaintiff's claim does not grow out of a violation of such a statute, the doctrine of assumed risk applies. Under that doctrine, the employe assumes those risks which are known to or clearly observable by him. There was nothing complicated about the character of the work. The operation was simple. The brace and ties were clearly observable by plaintiff. It is not insisted that the rail was dropped or thrown in a negligent manner. Being dropped without negligence, the danger of being struck by it was one of the risks ordinarily and usually incident to the employment, and, therefore, one which plaintiff assumed. It follows that the trial court properly directed a verdict in favor of the defendant.

Judgment affirmed.